## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

WILLIAM M. COLLINS,

             Plaintiff,

       vs.                                                    CIV No. 14-864 CG

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,
             Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff William Collins' *Motion to Reverse or Remand Administrative Agency Decision* with *Memorandum in Support of Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (the "Motion), (Docs. 20 & 21), filed February 12, 2015; Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision*, (Doc. 25), filed May 20, 2015; and *Plaintiff's Reply to Defendant's Brief in Response to Motion to Reverse and Remand the Agency's Administrative Decision*, (Doc. 26), filed May 26, 2015.

Mr. Collins filed an application for disability insurance benefits and supplemental security income on January 10, 2011, alleging disability beginning April 15, 2010. (Administrative Record ("AR") 171-72, 173-81). Both applications were denied initially on March 28, 2011, (AR 94-97), and again upon reconsideration on July 29, 2011. (AR 103-06, 107-09). Mr. Collins filed a request for a hearing on August 9, 2011, (AR 110-11); a hearing occurred on May 14, 2012 before Administrative Law Judge ("ALJ") Peter M. Keltch. (AR 22-73). Mr. Collins, his father, Steve Collins, Kweli Amusa M.D., an

impartial medical expert, and Cornelius J. Ford, an impartial vocational expert ("VE"), testified at the hearing. (*Id.*). Mr. Collins was represented at the hearing by Michael Liebman. (AR 10). ALJ Keltch was not available to issue a decision, and as a result ALJ Trace Baldwin issued a decision on March 1, 2013. (AR 10-21). He found that Mr. Collins was not disabled under the Social Security Act from April 15, 2010 through the date of the decision. (AR 21). Through counsel, Mr. Collins filed an application for review by the Appeals Council on April 12, 2013, (AR 6), which was summarily denied, (AR 1-5), making the decision of ALJ Baldwin the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Collins argues that the ALJ committed reversible, legal error by failing to: (i) consider all of Mr. Collins' impairments in formulating his residual functional capacity ("RFC"); (ii) properly consider evidence of Mr. Collins' work attempts; (iii) recognize that Mr. Collins' RFC required the need for job accommodations; (iv) render a credibility finding supported by substantial evidence; (v) provide a reasonable explanation for discrepancies between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); and (vi) consider VE testimony adverse to the ALJ's decision. (Doc. 21at 9-19).

The Court has reviewed the Motion, the Response, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to provide a reasonable explanation for the conflict between the VE's testimony and the DOT with regard to the General Education Development levels of the jobs identified for Mr. Collins by the VE, the Court finds that the Motion should be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

## I.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v.*

*Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III.   Background

Mr. Collins alleged disability beginning April 15, 2010 due to bipolar disorder, pervasive developmental disorder, and rule out receptive language disorder. (AR 103, 107).

At step one, the ALJ found that Mr. Collins had not engaged in substantial gainful activity since the alleged onset date of April 15, 2010. (AR 12). At step two, the ALJ concluded that Mr. Collins was severely impaired by Asperger's disorder. (AR 13). The ALJ found Mr. Collins' alleged bipolar disorder, pervasive development disorder, and rule out receptive language disorder to be non-severe. (*Id.*). At step three, the ALJ determined that none of Mr. Collins' impairments, solely or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926. (AR 15-16).

The ALJ proceeded to step four. The ALJ found that Mr. Collins' statements as to the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with his RFC assessment. (AR 18). He based this finding on Mr. Collins' and Mr. Collins' father's testimony, Mr. Collins' past work efforts, his daily activities, and friendships. (AR 17-18). The ALJ considered objective medical evidence, including treatment notes, the extent of medical treatment and relief from medication, and diagnostic tests. The ALJ also weighed and considered several medical opinions in the record. (AR 16-19).

The ALJ ultimately found that Mr. Collins had the RFC to perform a full range of

work at all exertional levels, except that he had several non-exertional limitations. (AR 16). The ALJ determined that Mr. Collins could only: (i) remember work-like procedures; (ii) understand and remember very short simple instructions; (iii) carry out very short simple instructions; (iv) maintain regular attendance and be punctual, although it is not critical that he maintain a schedule; (v) make simple work-related decisions; (vi) persist for an eight-hour day with regular breaks, normal levels of supervision, while working in conjunction with others; and (vii) maintain attention for extended periods of two-hour segments. (*Id.*). The ALJ also determined that there could be days he would have a hard time finishing his job; that he should be in a very supportive setting not requiring contact with the public; and that he should not work in jobs requiring he work on a team. (*Id.*). The ALJ then explained that, based on the testimony from the VE, Mr. Collins is unable to perform his past relevant work as a retail worker. (AR 19).

At step five, the ALJ inquired whether Mr. Collins would be able to perform any other work existing in significant numbers in the national economy. (AR 20). The ALJ noted that Mr. Collins was 25 years old on the alleged disability onset date, and therefore classified as a "younger individual" in accordance with the Regulations. The ALJ also determined that Mr. Collins has at least a high school education and is able to communicate in English. (*Id.*).

The VE testified at the hearing that an individual with Mr. Collins' same age, education, work experience, and RFC could perform the jobs of cannery worker, wire worker stripper, and garment worker. (AR 64-65). As a result, the ALJ concluded that because Mr. Collins was capable of performing work existing in significant numbers in the national economy, he was not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and

416.920(g). (AR 21).

**IV.    Analysis**

Mr. Collins argues that the ALJ committed reversible, legal error at steps four at

five. He contends that at step four, the ALJ rendered an RFC unsupported by

substantial evidence and legally erroneous by failing to: (i) consider all of Mr. Collins'

impairments; (ii) properly consider evidence of Mr. Collins' work attempts; (iii) recognize

that Mr. Collins' RFC required the need for job accommodations; and (iv) render a

proper credibility finding. (Doc. 21 at 10-14, 17-19). At step five, Mr. Collins maintains

that the ALJ erred by failing to: (i) provide a reasonable explanation for discrepancies

between the VE's testimony and the DOT; and (ii) consider VE testimony adverse to the

ALJ's decision. (Doc. 21at 14-17). The Commissioner responds that these arguments

have no merit and that the ALJ's decision is supported by substantial evidence and

should be affirmed. (Doc. 25 at 2).

A. _Mr. Collins' Challenges to the ALJ's Decision at Step Four_

At step four, the ALJ found that Mr. Collins retained the RFC to perform a full

range of work at all exertional levels, except that he was limited to: (i) remembering

work-like procedures; (ii) understanding and remembering very short simple

instructions; (iii) carrying out very short simple instructions; (iv) maintaining regular

attendance and being punctual, although maintaining a schedule is not critical; (v)

making simple work related decisions; (vi) persisting for an eight-hour day, with regular

breaks, normal levels of supervision, while working in conjunction with others; and (vii)

maintaining attention for extended periods of two-hour segments. (AR 16). The ALJ also

found that there might be days he would have a hard time finishing his job, that he

should be in a very supportive setting not requiring contact with the public, and that he should not work in jobs requiring that he work on a team. (*Id.*).

Mr. Collins argues that the ALJ's RFC determination is unsupported by substantial evidence and legally erroneous because the ALJ failed to: (i) consider all of Mr. Collins' impairments, specifically Mr. Collins' learning disorder; (ii) properly consider evidence of Mr. Collins' past work attempts, including  a letter from his former supervisor; (iii) recognize that Mr. Collins' RFC required the need for job accommodations; and (iv) render a proper credibility finding. (Doc. 21 at 10-14, 17-19).

The Commissioner responds that substantial evidence does support the RFC assessment, because the ALJ: (i) properly considered evidence regarding Mr. Collins' alleged learning disorder; (ii) reasonably considered Mr. Collins' work history, including the letter from his past supervisor; (iii) did not include in the RFC determination any special job accommodations; and (iv) reasonably found Mr. Collins' statements not entirely credible. (Doc. 25 at 3-9).

### 1. The Court Will Not Decide Whether the ALJ Properly Considered All of Mr. Collins' Impairments

Mr. Collins first argues that the ALJ failed to consider his learning disorder in his findings. (Doc. 21 at 11). In support, Mr. Collins points to evidence of extreme deficits in basic language, reasoning, and mathematical skills. (Doc. 21 at 11; AR 341-65). The Commissioner responds that this argument is not fully developed, and that the Court should not consider it. (Doc. 25 at 3). The Court agrees. Mr. Collins merely states that the ALJ found Asperger's Disorder to be Mr. Collins' only step two severe impairment, and states generally that the ALJ is required to consider all medically determinable impairments. (Doc. 21 at 11). Mr. Collins does not otherwise explain how the ALJ's

reasoning is deficient. (*Id.*). Given that the ALJ discussed the cited evidence of Mr. Collins' learning disorder in the written decision, Mr. Collins does not adequately develop this argument. As a result, the Court will not consider it. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (considering only those arguments that the plaintiff adequately briefed for review, and not those that were poorly developed) (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)).

### 2. The ALJ Properly Considered Mr. Collins' Past Work History and Accounted for Mr. Collins' Limitations in the RFC

In addition, Mr. Collins argues that the ALJ improperly relied on his previous work activity to make the RFC assessment. (Doc. 21 at 11). First, Mr. Collins contends, the ALJ relied on work activity that occurred prior to Mr. Collins alleged disability onset date. (*Id.*). Second, the ALJ should have considered probative evidence that Mr. Collins' past work attempts ended because of conflicts with coworkers or supervisors, or an inability to perform the job as required. (Doc. 21 at 11-12). Mr. Collins emphasizes that a letter from Ms. Amy L. Fagan, Mr. Collins' former supervisor at Crumpacker Corporation, is particularly probative and undermines the ALJ's RFC finding. (Doc. 21 at 12). Mr. Collins argues that this letter was submitted to the Appeals Council upon review, and that the Appeals Council erred in failing to remand the case for its consideration. (Doc. 26 at 2).

The Commissioner responds that the ALJ reasonably considered Mr. Collins' past work history, including the work attempted prior to the alleged disability onset date. (Doc. 25 at 4-5). The Commissioner further argues that the Appeals Council properly considered Ms. Fagan's letter, and found that it did not change the ALJ's decision. (Doc. 25 at 5-6).

*a.  Mr. Collins' Past Work History*

The ALJ noted in his discussion of the testimony that, despite his impairment, Mr. Collins had worked in several positions throughout 2008-2010, prior to the date of alleged disability onset. (AR 18). The ALJ noted that Mr. Collins had worked at, or close to the level of, substantial gainful activity, and was working as a bakery apprentice at the time of decision. (*Id.*). Mr. Collins argues that the ALJ should not have considered his work history prior to the date of alleged disability onset, and that the ALJ should have also considered probative evidence that all of his jobs ended because of his impairments. (Doc. 21 at 11-12).

Mr. Collins does not provide any authority for the proposition that the ALJ cannot consider work performed before the alleged disability onset date in making the RFC determination. Indeed, the RFC assessment is based on all of the evidence in the case record, both medical and non-medical. *Sissom v. Colvin*, No. 12-6131, 512 Fed. Appx. 762, 767 (10th Cir. Mar. 1, 2013) (unpublished) (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). Mr. Collins' work activity performed while suffering from his alleged impairment, regardless of whether it occurred before the date of alleged onset, seems relevant to the RFC determination. Mr. Collins does not make any further argument as to why this evidence is irrelevant, or challenge the ALJ's finding that he was suffering from his impairment while he was working. As a result, the Court finds that the ALJ did not err in considering Mr. Collins' work history prior to the allege disability onset date.

As for other evidence of Mr. Collins' past work attempts, Mr. Collins does not explicitly describe the evidence he asserts the ALJ should have considered. Instead, Mr. Collins cites to portions of the record that include statements from Mr. Collins and

his father. They assert that Mr. Collins struggled to keep his jobs due to problems getting along with supervisors and coworkers, and that he had trouble keeping up with more than simple tasks. (Doc. 21 at 11 (citing AR 45-48, 52-54, 69-71, 212, 232, 242)).

In making the RFC determination, an ALJ must consider all evidence in the record, although he is not required to discuss every piece of evidence in his decision. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). At the same time, Tenth Circuit precedents "allow the ALJ to engage in less extensive analysis where 'none of the record [ ] evidence conflicts with [his RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). It is clear that "when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard*, 379 F.3d at 947.

Here, contrary to Mr. Collins' contentions, the ALJ did consider Mr. Collins' difficulties in getting along with others, especially at work. The ALJ explicitly describes the testimony from Mr. Collins and his father that Mr. Collins cites in his briefing. (AR 17). The ALJ also expressly acknowledges that the "evidence of record supports Mr. Collins' reports of difficulty getting along with others at times," and states that the RFC determination accounts for this limitation. (*Id.*). Indeed, the RFC limits Mr. Collins to understanding, remembering, and carrying out very short simple instructions, making

simple work-related decisions, to being in a very supportive setting not requiring contact with the public, and to jobs that do not require he work on a team. (AR 16). Mr. Collins does not point to any evidence suggestive of additional limitations that the ALJ did not consider or account for in the RFC. *See Keyes-Zachary*, 695 F.3d at 1161-65 (holding that the ALJ's failure to weigh medical opinions was harmless since any medical opinions in the record on the claimant's ability to work were consistent with the RFC finding). Therefore, the Court does not find that the ALJ committed reversible error in considering Mr. Collins past work attempts.

### b. The Letter From Ms. Fagan

Mr. Collins also argues that the Appeals Council did not properly consider a letter from Ms. Fagan, Mr. Collins' former supervisor at Crumpacker Corporation, where Mr. Collins worked from March to July 2012. (Doc. 21 at 12; Doc. 26 at 1-2). Mr. Collins contends that the letter is inconsistent with the ALJ's RFC determination, and that the Appeals Council should have remanded the case for its consideration, given that it was new and material evidence. (Doc. 26 at 2).

The Commissioner responds that the Appeals Council did consider Ms. Fagan's letter, and found that it did not change the ALJ's decision. (Doc. 25 at 5). The Commissioner maintains that evidence from a lay witness, such as Ms. Fagan, cannot establish disability or the existence of an impairment and, in any event, the ALJ accounted for the limitations highlighted in the letter in the RFC. (Doc. 25 at 5-6).

Pursuant to 20 C.F.R. §§ 404.970(b) and 416.1470(b), the Appeals Council is required to consider evidence submitted for their review if the additional evidence is: (a) new; (b) material; and (c) related to the period on or before the date of the ALJ's

decision. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (internal citations omitted). If the evidence submitted does not meet these criteria, "it plays no further role in judicial review of the Commissioner's decision." *Id.* (internal citations omitted). "If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record" which the reviewing court assesses "in evaluating the Commissioner's denial of benefits under the substantial evidence standard." *Id.* (internal citations omitted). On the other hand, if the evidence meets the criteria, but the Appeals Council did not consider it in their review of the proceedings, the reviewing court should remand the case for further proceedings. *Id.* (internal citations omitted).

Here, the Appeals Council stated that it "considered the reasons [Mr. Collins] disagree[s] with the decision and the additional evidence listed on the enclosed Order of Appeals Council." (AR 1). The additional evidence was described in the Order of Appeals Council as "Exhibit 15E Updated letter from Amy L. Fagan, Crumpacker Corp." (AR 4). The Appeals Council concluded that "the additional evidence does not provide a basis for changing the [ALJ's] decision. The additional evidence consisted of 1 page from Amy L. Fagan, Crumpacker Corp." (AR 2). Such language is sufficient for the Court to conclude that the Appeals Council adequately considered the additional evidence. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006). As a result, the letter from Ms. Fagan is part of the record to be considered by the Court in reviewing the ALJ's decision for substantial evidence. *See id.*

Nevertheless, considering Ms. Fagan's letter, the Court finds that the ALJ's RFC determination is supported by substantial evidence. In the letter, Ms. Fagan states that Mr. Collins: (i) suffers from poor listening skills and ability to process instructions; (ii) is worried about and paranoid towards fellow workers; (iii) is possessive of tasks/not a team player; and (iv) is defensive and confrontational when criticized. (AR 287). As the Commissioner points out, (Doc. 25 at 5-6), these limitations are accommodated for in the RFC. *See Keyes-Zachary*, 695 F.3d at 1161-65. Again, the RFC limits Mr. Collins to understanding, remembering, and carrying out very short simple instructions, making simple work-related decisions, to being in a very supportive setting not requiring contact with the public, and to jobs that do not require he work on a team. (AR 16). Therefore, similar to above, Mr. Collins has not established an error with regard to Ms. Fagan's letter.

### 3. The ALJ's RFC Determination Did Not Include Job Accommodations as a Matter of Law

Third, Mr. Collins argues that the ALJ included special job accommodations under the American's with Disabilities Act ("ADA") in his RFC assessment as a matter of law, in violation of the Commissioner's own policies and persuasive authority. (Doc. 21 at 12-14; Doc. 26 at 1-2). Specifically, Mr. Collins contends that, in the RFC assessment and the hypothetical RFC presented to the VE, the ALJ determined that Mr. Collins may have a hard time finishing his job and that he should be in a very supportive setting. (Doc. 21 at 12). As a result, Mr. Collins maintains that the ALJ asked the VE to assume in his hypothetical that the individual would be held to lower productivity standards. It follows that the VE testified that a person with Mr. Collins' RFC could only perform work with special accommodations under the ADA. (Doc. 26 at 2).

The Commissioner responds that this argument is without merit, since the ALJ provided the VE with a hypothetical which included the limitations in Mr. Collins' RFC, and in response to that hypothetical the VE testified that the hypothetical individual could perform work as a cannery worker, wire worker stripper, and garment worker. (Doc. 25 at 6-7). The Commissioner maintains that, because neither the ALJ nor the VE couched Mr. Collins' limitations in terms of ADA-required job accommodations, there was no error. (*Id.*). Mr. Collins clarifies in his Reply that his argument is that the ALJ erred as a matter of law in allowing the VE to testify that he could perform work with special accommodations regarding productivity, regardless of whether the ALJ or the VE described those accommodations as arising under the ADA. (Doc. 26 at 2).

The United States Supreme Court has held that claims under the Social Security Act ("SSA") and the ADA do not necessarily conflict, and that there may be situations in which claims under both statutes may exist side by side. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 802-03 (1999). In *Cleveland*, the Supreme Court explained that in determining whether a person is disabled under the SSA, the ALJ "does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for [benefits under the SSA]." *Cleveland*, 526 U.S. at 803. In addition, the Commissioner has issued policy statements reiterating that the question of whether work exists for a particular claimant "is based on the functional demands and duties of jobs as ordinarily required by employers through the national economy, and not on what may be isolated variations in job demands (regardless of whether such variations are due to compliance with anti-discrimination statutes or other factors)." (Doc. 21-1 at 2).

Indeed, relying on the principle that the SSA and the ADA have different purposes and have no direct relationship to each other, other circuits have held that a VE should not base a finding of non-disability on the assumption that the ADA requires an employer to accommodate an individual's disability. *See Eback v. Chater*, 94 F.3d 410 (8th Cir. 1996) (finding error where the determination of relevant jobs existing in the national economy was based on the assumption that the employer would be willing to make accommodations under the ADA for claimant's required daily use of a nebulizer ); *Jones v. Apfel*, 174 F.3d 692 (5th Cir. 1999) (holding that a VE should not base his determination of the availability of jobs on the assumption that the ADA requires an employer to accommodate an individual's disability).

Mr. Collins argues that, while the ALJ did not couch Mr. Collins' limitations in terms of an ADA-required accommodation, the limitations in his RFC nevertheless imply that job accommodations would be required, and therefore this line of cases is instructive. (Doc. 21 at 13; Doc. 26 at 2). However, this argument is not persuasive.

Because neither the ALJ nor the VE suggested that Mr. Collins' limitations required accommodations under the ADA or assumed that employers would make those accommodations, this case is distinguishable from those Mr. Collins cites in support of his argument. In *Eback*, the VE testified that in making his determination as to what jobs would be available to the plaintiff, he assumed that the employer would make a reasonable accommodation under the ADA for the plaintiff to use her nebulizer. *Eback*, 94 F.3d at 412. The *Jones* Court agreed with the Eight Circuit, but held that the ALJ did not err in relying on the VE's testimony which suggested not that he assumed the job identified for the plaintiff required special accommodations, but that dealing with

16

the plaintiff's particular limitation was a prevalent accommodation in the workplace. *Jones*, 174 F.3d at 693-94.

Indeed, most district courts applying *Jones* and *Eback* have held that the ALJ may properly rely on VE testimony where neither the ALJ nor the VE indicate that the limitations and jobs available are based on an assumption that isolated employers would accommodate the plaintiff's limitations. *Compare Eback*, 94 F.3d at 412 (finding error where ALJ relied on VE testimony that claimant could work given that an employer should make a reasonable accommodation for her use of a nebulizer), *Sullivan v. Halter*, 135 F. Supp. 2d 985, 988 (S.D. Iowa 2001) (reversing case where VE testified that a person with the plaintiff's impairments and limitations could only perform work as Library Clerk if employer was willing to make special accommodations), *and Widener v. Astrue*, Civil Action No. 08-107-DLB, 2009 WL 2778215, at *5 (E.D. Ky. 2009) (unpublished) (remanding case because ALJ adopted testimony of VE that an employer would reasonably accommodate a person with the plaintiff's limitations under the ADA in determining whether work existed for the plaintiff in the national economy), *with Cantrell v. Colvin*, No. 2:12-cv-01504-GMN-GWF, 2013 WL 5947808, at * 9 (D. Nev. 2013) (unpublished) (finding no error where VE testified that a person with the plaintiff's limitations could perform the plaintiff's previous job without implying or assuming that the employer would provide accommodations), *Eaglebarger v. Astrue*, No. 1:11-CV-00038, 2012 WL 602022, at *6 (N.D. Ind. 2012) (unpublished) (affirming decision where VE did not suggest that a person with plaintiff's limitations might require a reasonable accommodation in order to perform work identified or assume an employer would be willing to make an accommodation), *and Titus v. Astrue*, No. 1:11CV1286, 2012 WL

3113165, at *13 (N.D. Ohio 2012) (unpublished) (affirming ALJ's reliance on VE testimony where VE did not state that the hypothetical person with plaintiff's limitations would require special accommodations or that she assumed an employer would provide such accommodations, and provided three jobs the hypothetical person could perform considering the stated limitations).

Here, in response to the ALJ's hypothetical, which included Mr. Collins' limitations, the VE testified that the hypothetical individual could perform work as a cannery worker, a wire worker stripper, or a garment worker. (AR 64-65). It is undisputed that the neither the VE nor the ALJ stated that Mr. Collins' ability to perform such work was contingent upon employers making reasonable accommodations under the ADA. (Doc. 21 at 13). Mr. Collins has not otherwise provided, and the Court has not found, any authority supporting his proposition that the ALJ erred as a matter of law by stating that there would be days Mr. Collins "would have a hard time finishing his job," and that "he should be in a very supportive setting." (AR 16). Furthermore, this limitation does not state that Mr. Collins should not be required, or that he is not able to finish his job. Rather, the RFC states that he may have a hard time doing so and should be in a supportive setting. (AR 16). In light of this, this Court declines to hold that the ALJ erred as a matter of law by including such limitations in the RFC, or by relying on the VE's testimony that a person with those limitations could perform work in the national economy.

### 4. The ALJ's Credibility Finding is Supported by Substantial Evidence

Finally, at step four, Mr. Collins argues that the ALJ's credibility determination is

unsupported by substantial evidence and legally erroneous. (Doc. 21 at 17-19). Mr.

Collins maintains that the ALJ improperly relied on his pre-onset work activity, his

hobbies, and two or three friendships in making the credibility finding. (Doc. 21 at 18-

19).

The Commissioner responds that an ALJ may consider evidence of a claimant's

work record in making a credibility finding. (Doc. 25 at 7). Similarly, the Commissioner

contends that Mr. Collins' friendships and hobbies were relevant considerations. (Doc.

25 at 8). In addition, the Commissioner maintains that the ALJ also considered other

factors, including the effectiveness of medication and therapy and a gap in treatment

from January to May 2011. (Doc. 25 at 8-9). Therefore, the Commissioner argues, the

credibility finding is supported by substantial evidence.

The ALJ must consider the credibility of the claimant's subjective testimony about

his symptoms, and its effect on his ability to work, in making the RFC determination.

*See Madron v. Astrue*, No. 06-1200, 311 Fed. Appx. 170, 175 (10th Cir. Feb. 11, 2009)

(unpublished) (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *6).

Normally, "credibility determinations are peculiarly the province of the finder of fact, and

we will not upset such determinations when supported by substantial evidence." *Wilson*

*v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal citation and quotations

omitted). However, where the ALJ responsible for writing the decision regarding a

claimant's application for benefits did not have the benefit of personally observing the

claimant's testimony, the reviewing court must "closely scrutinize" the ALJ's credibility

determination. *Wyatt v. Barnhart*, No. 05-6375, 190 Fed. Appx. 730, 733 (10th Cir. Aug.

25, 2006) (unpublished). In any case, "findings as to credibility should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson*, 602 F.3d at 1144 (brackets, citation, and internal quotation marks omitted).

The Regulations describe a two-step process for evaluating a claimant's symptoms. *See* SSR 96-7p, 1996 WL 374186, at *2; 20 C.F.R. §§ 404.1529 and 416.929. First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment – i.e., an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2. Second, once a claimant has shown that he suffers from a medically determinable impairment that can reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms and the extent to which they limit the claimant's functioning. *Id.*

Here, the ALJ found that Mr. Collins' medically determinable impairment could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (AR 18). In making this determination, the ALJ stated that he considered the evidence in the record. (*Id.*). Unless there is some indication otherwise, the Court will take the ALJ's word when he states that he considered all of the evidence. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Here, there is no such indication, since the ALJ's credibility determination was made alongside the RFC findings, where he thoroughly discussed the medical evidence, opinions, and testimony. (AR 16-19).

In addition to considering the record as a whole, the ALJ explained specifically that he found Mr. Collins' statements only partially credible due to his reported daily activities, friendships, and past work history. (AR 17-18). Additionally, after discussing the medical evidence in the record, the ALJ concluded that "treatment notes in the record fail to support the claimant's allegations of disabling limitations." (AR 19).

It is certainly appropriate for an ALJ to consider a claimant's daily activities when evaluating the credibility of his alleged symptoms as they reflect on the claimant's ability to function. *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013). However, the Court reads the ALJ's decision as also considering Mr. Collins' and his father's statements as to his activities and friendships as internally inconsistent with other testimony, which is also a proper consideration in making a credibility determination. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c). The ALJ noted that while Mr. Collins had problems getting along with others at work, he also acknowledged that he had two or three friends and that he tries to get more work, and has other interests and hobbies such as hiking, cars, music, and using a computer for surfing the internet, using email, and taking classes on programs such as Photoshop. (AR 17). The ALJ then stated that while Mr. Collins' father testified that Mr. Collins' low self-esteem and anger build up, causing him to erupt in work settings, he also testified that Mr. Collins can fairly easily pick up job routines and maintain a schedule, as long as there aren't many changes, and that he can focus and maintain concentration when he understands a task. (*Id.*).

The ALJ also relied on the medical record to find that Mr. Collins' statements were only partially credible. *See Brescia v. Astrue*, No. 07-4234, 287 Fed. Appx. 626, 630 (10th Cir. July 8, 2008) (unpublished). The ALJ thoroughly discussed the medical

evidence and opinions in the record, and determined that it did not support Mr. Collins'

allegations of disabling limitations. (AR 18-19). The ALJ cited to medical notes and

evaluations that indicated Mr. Collins could perform unskilled work in settings with little

social interaction, noted improvements in treatment, and other medical opinions that Mr.

Collins may be able to work in supportive settings in a limited fashion. (AR 19). These

findings are supported by the record. (AR 293, 299-334, 365).

Finally, the ALJ relied on Mr. Collins' past work activity to make the adverse

credibility finding. The ALJ stated that, despite suffering from his impairment, Mr. Collins

worked to the level of substantial gainful activity in 2008, and held several other

positions throughout 2008 through 2010, although he retained those positions for only

up to four months. (AR 18).

Mr. Collins argues that this was improper given that the ALJ considered work

performed prior to the date of alleged disability onset. (Doc. 21 at 18). Mr. Collins

provides no authority for this argument. He further contends that this is particularly

improper given evidence in the record that the jobs lasted under a year and ended due

to Mr. Collins' inability to get along with supervisors, coworkers, or to perform work

tasks. (*Id.*). Because of this, Mr. Collins' work history is more of a series of

"unsuccessful work attempts" than past relevant work, and supports a finding of

disability. (*Id.*). In support, Mr. Collins points to SSR 05-02, 2005 WL 568616 and SSR

84-25, 1984 WL 49799. However, these rulings prohibit an ALJ from considering

unsuccessful work attempts as proof of an ability to engage in substantial gainful

activity. They do not suggest that efforts to work are irrelevant in the context of a

claimant's credibility. *See Barraza v. Barnhart*, 61 Fed. Appx. 917, at *3 (5th Cir. Feb.

22

11, 2003) (unpublished) (finding that unsuccessful work attempts do not suggest that claimant's attempts to do medium or light capacity work cannot call his statements of disabling pain into question).

Indeed, as the Commissioner responds, (Doc. 25 at 7), "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. . .including. . .efforts to work."  SSR 96-7p, 1996 WL 374186, at *5-6. The Tenth Circuit has previously upheld an ALJ's adverse credibility finding where the claimant had previously worked with longstanding impairments, suggesting that those conditions would not currently prevent work. *Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008); *See generally Ruybal v. Astrue*, No. 2:07-cv-01060-KBM, at *23-25 (discussing Tenth Circuit cases and cases from other circuits which expressly acknowledge that work efforts are a proper consideration in the credibility analysis).

In any event, the ALJ did not rely solely on Mr. Collins' past work history to make the credibility determination. The Court finds that the ALJ's credibility finding is otherwise supported by substantial evidence.

The ALJ's credibility determination survives even this Court's closer scrutiny. Although the ALJ did not have the benefit of observing Mr. Collins and his father testify, the credibility finding is not based on their demeanor or other observations at the hearing. Rather, the ALJ links the finding to inconsistencies within their testimony, self-reported activities, and documentary evidence. *Compare Wyatt*, 190 Fed. Appx. at 733 (finding that, where ALJ was not present at the hearing, inconsistencies between the claimant's testimony and the treatment notes in the record, along with internal

inconsistencies in her statements, were sufficient to support the ALJ's adverse credibility finding), *with Martinez v. Astrue*, No. 2:07-cv-01227-KBM, at *2-3 (D.N.M. filed Aug. 6, 2008) (unpublished) (remanding case where ALJ based credibility finding in part on demeanor he did not personally observe at the hearing). As a result, the ALJ's credibility finding is supported by substantial evidence and is without error.

> B. <u>Mr. Collins' Challenges to the ALJ's Decision at Step Five</u>

At step five, Mr. Collins reiterates that the ALJ erred in adopting the VE's testimony that Mr. Collins could perform the jobs identified without reasonable accommodations.[2] (Doc. 21 at 14). Mr. Collins also argues that the ALJ failed to reconcile discrepancies between the VE's testimony and the DOT, and filed to consider VE testimony elicited by Mr. Collins that was adverse to the ALJ's position. (Doc. 14-17).

The Commissioner responds by again stating that the ALJ reasonably relied on the VE testimony regarding Mr. Collins' ability to work without assuming that he would require reasonable accommodations. (Doc. 25 at 9-10). The Commissioner further argues that there was no apparent conflict between the VE testimony and the DOT, and therefore the ALJ did not err at step five. (Doc. 25 at 10-11).

> 1. *The ALJ's RFC Determination and Corresponding VE Testimony*

Based on Mr. Collins' RFC, the ALJ determined that Mr. Collins is unable to perform his past relevant work as a retail worker. (AR 19). At step five, the ALJ elicited testimony from the VE to determine whether jobs existed in the national economy for someone with Mr. Collins' age, education, work experience, and RFC. (AR 20, 64-65). In response to this hypothetical, the VE testified that such a person could work as a

---

[2] *See* discussion at pp. 14-18, *supra.*

cannery worker (DOT 526.686-014), wire worker stripper (DOT 728.684-022), or garment sorter (DOT 222.687-014). (*Id.*). At the hearing, the ALJ did not inquire as to whether or not the VE's testimony was consistent with the DOT. In the written decision, however, the ALJ stated that he had determined that the VE's testimony was consistent with the DOT, and adopted the testimony. (AR 20-21).

### 2. *The ALJ Erred in Failing to Elicit a Reasonable Explanation for the Discrepancy Between the DOT and the VE Testimony*

Mr. Collins argues that the ALJ erred at step five by failing to provide a reasonable explanation for conflicts between the VE's testimony and the DOT.  (Doc. 21 at 14-17; Doc. 26 at 2-3). He contends that the VE testified that individuals with Mr. Collins' limitations could perform work which was inconsistent with his RFC. (*Id.*). Mr. Collins maintains that the ALJ's failure to provide a reasonable explanation for this apparent inconsistency between the VE's testimony and the DOT was error as a matter of law. (*Id.*).

The Commissioner responds that the VE did not rescind his testimony, or state that there was a conflict between his testimony and the DOT. (Doc. 25 at 10). The Commissioner further argues that Mr. Collins' counsel did not assert that there was a conflict, and that, therefore, there was no apparent conflict between the VE testimony and the DOT. (Doc. 25 at 11). Mr. Collins replies that he raised obvious conflicts with the DOT, and, in any event, was not required to raise the apparent conflict at the hearing. (Doc. 26 at 3).

At steps four and five, an ALJ may consult vocational resources, such as the DOT or VEs, to determine whether a claimant is able to perform her past work, or other work in the national economy. 20 C.F.R. §§ 404.1566(e), 416.966(e); *see* SSR 00-04p,

2000 WL 1898704, at *2 (2000); *Winfrey v. Chater*, 92 F.2d at 1025 (holding that a VE may supply information to the ALJ about the demands of a claimant's past relevant work). However, it is well-established that "before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability," an "ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see also* SSR 00-04p, 2000 WL 1898704, at *2.

At issue here is the VE's testimony that, in light of Mr. Collins' age, education, work experience, and RFC, he could perform work in the national economy as a cannery worker (DOT 526.686-014), wire worker stripper (DOT 728.684-022), and garment sorter (DOT 222.687-014). Mr. Collins argues that, given that he is limited to understanding and remembering "very short simple instructions", the VE's testimony that he is capable of performing these jobs is inconsistent with the DOT. (Doc. 21 at 15-17). He maintains that the DOT states that all three positions require a General Educational Development ("GED") reasoning level of at least two, which exceeds Mr. Collins' RFC limiting him to understanding and remembering "very short simple instructions." (*Id.*).

In support of this argument, Mr. Collins points to *Hackett v. Barnhart*, where the Tenth Circuit remanded a case to the Commissioner because the ALJ failed to reconcile an apparent conflict between the plaintiff's RFC and the VE's testimony that she could perform work with certain GED levels. (Doc. 26 at 3). Indeed, the Court in *Hackett* held that the GED reasoning level three was inconsistent with the claimant's limitation to performing only "simple and routine work tasks." 395 F.3d 1168, 1176 (10th Cir. 2005).

Reasoning level three is defined as "the ability to 'apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [, and d]eal with problems involving several concrete variables in or from standardized situations.'" *Id.* (citing Dep't of Labor, DOT, App. C, § III (4th ed. 1991), 1991 WL 688701).

 The Tenth Circuit found that this level of reasoning seemed inconsistent with the Plaintiff's RFC to perform "simple and routine work tasks." Instead, level two reasoning, defined as the ability to "'[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instruction [and d]eal with problems involving a few concrete variables in or from standardized situations,'" seemed more consistent with such a limitation. *Id.* (citing DOT, App. C, § III). Because the ALJ had not addressed this "apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE," the *Hackett* court remanded the case for further proceedings. *Id.*

 Following *Hackett*, this Circuit has consistently identified a conflict between limitations to simple and routine tasks and level-three reasoning. *See Pritchett v. Astrue*, No. 06-5130, 220 Fed. Appx. 790, 793 (10th Cir. Mar. 23, 2007) (unpublished) (remanding case for ALJ to address discrepancy between plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the job identified for him by the VE); *Garcia v. Barnhart*, No. 05-2322, 188 Fed. Appx. 760, 766-67 (10th Cir. July 13, 2006) (unpublished) (stating rule that there is a facial conflict between a claimant's inability to perform more than simple and repetitive tasks and level-three reasoning required in the DOT for jobs identified by the VE); *Hudman v. Astrue*, No. 1:08-cv-00643-RLP, at *16 (D.N.M. filed Apr. 16, 2009) (unpublished)

(finding reversible error where the ALJ failed to address the conflict between plaintiff's limitation to follow only simple verbal and written instructions and level-three reasoning required in the DOT for jobs identified by the VE); *Brown-Mueller v. Colvin*, No. 13-cv-00537-PAB, 2015 WL 1433275, at *3 (D. Colo. Mar. 25, 2015) (unpublished) (holding that, under *Hackett*, the ALJ erred in failing to address inconsistency between plaintiff's limitation to follow only simple, 3- to 4-step instructions and level-three reasoning of jobs identified by VE).

Mr. Collins argues that his limitation to understanding and remembering "very short simple instructions" is inconsistent with jobs requiring even level-two reasoning. (Doc. 21 at 15). This Court agrees. Mr. Collins' inability to understand, remember, and carry out "very short simple instructions" is more restrictive than the limitation to performing "simple and routine work tasks" posed in *Hackett*. 395 F.3d at 1175. Reasoning level one, defined as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job," DOT, App. C, § III, seems more consistent with Mr. Collins' limitations. Indeed, courts have already held similarly in this district. *See See Hudman v. Astrue*, No. 1:08-cv-00643-RLP, at *16 (explaining that the plaintiff's limitation to following simple verbal and written instructions was more restrictive than the limitation for simple and routine work tasks in *Hackett* and consistent with level-one reasoning).

The Commissioner argues that the VE did not state that there was a conflict at the hearing, or that Mr. Collins' counsel asserted any conflict at the hearing. This argument is misplaced. As Mr. Collins points out, there is no need for a plaintiff to raise

the conflict at the hearing, or otherwise, before appealing to the district court. *Hackett v. Barnhart*, 395 F.3d at 1176 (citing *Sims v. Apfel*, 530 U.S. 103 (2000)) (explaining that a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) need not preserve issues in the proceedings before the Commissioner or her delegates). More importantly, at the hearing, the ALJ failed to ask the VE whether his testimony was consistent with the DOT. There is no indication in the record that the VE acknowledged this particular conflict with the DOT, or that he offered any explanation for the conflict. *See Hackett*, 395 F.3d 1168 at 1175 (remanding to ALJ to provide explanation for conflict that was not addressed in the record, even though ALJ generally asserted that discrepancies between the VE testimony and the DOT were based on the VE's own experience). Therefore, even though the ALJ determined there was no conflict in the written decision, (AR 20), he did not properly elicit a reasonable explanation for the apparent discrepancy between the VE's testimony and the DOT as described above. His failure to do so is reversible error.

Mr. Collins further argues that these positions also require GED levels of two for either language development or math development, and that those levels exceed Mr. Collins' abilities as reflected by objective medical evidence in the record. (Doc. 21 at 15-16). However, Mr. Collins does not point to any limitation in the RFC that suggests he is unable to perform at the levels required by the jobs described by the VE. At a result, it would seem that there is no apparent conflict between the VE's testimony as to the language or math development levels at which Mr. Collins may perform and the DOT.

### C. *Mr. Collins' Request for an Immediate Award of Benefits*

Mr. Collins requests that the Court reverse the decision of the Commissioner and remand the case for an immediate award of disability benefits. (Doc. 21 at 19). The decision of whether to remand a case for additional fact-finding or for an immediate award of benefits is within the discretion of the district court. *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). To make this decision, the Court considers the length of time the matter has been pending and whether additional fact-finding would serve any useful purpose or merely delay the receipt of benefits. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

Here, Mr. Collins' application for benefits has been pending since December 2010, which is a considerable amount of time, but not entirely unusual for a case which has been evaluated by an ALJ and the Appeals Council. Moreover, additional factual development by the ALJ is required. The Court cannot say that there is substantial and uncontradicted evidence in the record that indicates Mr. Collins is disabled. *See Hudman*, No. 1:08-cv-00643-RLP, at *17. Indeed, the ALJ may need to elicit new VE testimony in light of the discussion above. Under these circumstances, the Court will take heed not to assume the role of fact-finder and substitute its judgment for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

For all of the foregoing reasons, the facts of this case do not necessitate an immediate award of benefits at this time. The Court therefore orders that Mr. Collins' request for an immediate award of benefits be denied.

## V.   Conclusion

For the reasons discussed above, the Court concludes that the ALJ failed to

provide a reasonable explanation for the conflict between the VE's testimony and the DOT with regard to the reasoning level required by the jobs identified for Mr. Collins by the VE. On remand, the ALJ should inquire as to any inconsistencies between the VE's testimony and the DOT, especially as they relate to the GED levels of the jobs identified for Mr. Collins, and provide a reasonable explanation for those inconsistencies if he chooses to adopt the testimony. The Court does not decide any other issue raised by Mr. Collins on appeal, as these matters would be mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 20), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.


_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE